IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

BIG HAMMER V. CROSS & SONS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BIG HAMMER, INC. ET AL., APPELLANTS,

V.

CROSS AND SONS, INC., APPELLEE.

Filed May 10, 2022.    No. A-21-614.

Appeal from the District Court for Seward County: JAMES C. STECKER, Judge. Affirmed.

Christopher M. Johnson for appellants.

Michael T. Gibbons, Christopher D. Jerram, and Raymond E. Walden, of Woodke & Gibbons, P.C., L.L.O., for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Ronald Miller, Christina Miller, and Big Hammer, Inc. (Big Hammer) (collectively the appellants) filed an action against Cross and Sons, Inc. (Cross) in the district court for Seward County alleging that Cross breached an oral contract and negligently repaired a 1996 Kenworth truck owned by Big Hammer. The district court entered an order sustaining Cross' motion for summary judgment from which the appellants have appealed. Upon our review of the record, we conclude that Cross was entitled to judgment as a matter of law. As such, we affirm the district court's grant of summary judgment in favor of Cross.

### BACKGROUND

On August 20, 2019, the appellants filed a complaint alleging that Cross breached an oral contract to repair the Kenworth, committed the tort of bad faith by making certain repairs that

- 1 -

Cross knew or should have known that it was unable to properly perform, and negligently provided mechanical services to the Kenworth.

On November 15, 2019, the appellants filed an amended complaint. The appellants identified Big Hammer as being a business incorporated in Nebraska owned and operated by Ronald and Christina. The amended complaint alleged that pursuant to an oral contract Cross agreed to perform mechanical services on the Kenworth which would be "of a sufficient quality to repair the Vehicle in ordinary operating condition." The appellants alleged that Cross breached the contract by performing services that were of an insufficient quality to repair the Kenworth. The appellants further asserted that due to Cross' "substandard mechanical work," the appellants suffered total damages amounting to $58,996.75.

The appellants also made a claim based on negligence. The appellants alleged that Cross failed to provide mechanical services of an ordinary quality found in the diesel mechanic industry. Specifically, the appellants alleged that Cross "misdiagnosed" algae being in a diesel fuel tank, "misaligned the engine," "tightened the 'Jakes' too tight," did not "tighten the engine injectors enough, resulting in the injectors being too loose," and installed a "turbo" which Cross "knew or should have known to be defective, broken, of insufficient quality, or past its useful life." According to the appellants, as a result of these negligent repairs, they suffered damages in the total amount of $58,996.75.

Cross timely filed an answer to the complaint denying the allegations found in the amended complaint and asserted affirmative defenses, including, as pertinent to the present appeal, that Ronald and Christina were not the real parties in interest because the Kenworth was owned by Big Hammer and not individually owned by Ronald and Christina.

The following facts were asserted in the amended complaint. In August 2017, Ronald was operating the Kenworth when it began to experience mechanical difficulties. Ronald was referred to Cross for mechanical repairs. He reached a verbal agreement with Cross to repair it. On August 23, 2017, Cross notified Ronald that the Kenworth's engine would need to have a "total overhaul." As part of the agreement, Ronald purchased and obtained parts from another auto body shop for Cross to install.

On September 27, 2017, Cross notified Ronald that repairs to the Kenworth were complete. Ronald retrieved the Kenworth and began to drive it back to Buffalo County when it began to overheat. Ronald drove the Kenworth back to Cross who then inspected it. Cross informed Ronald that there was a "faulty sending unit" in the Kenworth. Cross also explained to Ronald that although he could drive it back to his residence without an issue, he would need to replace the "sending unit" immediately thereafter. Immediately after arriving to his residence Ronald had a "sending unit" installed and the temperature gauge in the Kenworth indicated that it was working properly.

On October 2, 2017, Ronald entered into a separate contract to use the Kenworth to pull a trailer. However, the vehicle could not produce enough power to pull the load. Ronald took the Kenworth to Cross who proceeded to inspect it over two days. Upon completing the inspection, Cross informed Ronald that the "fuel was bad and had algae in the fuel tanks" but that Cross did not have the time to clean the tanks. Cross explained that Ronald could drive the Kenworth but Ronald would need to replace the fuel filters. Ronald proceeded to drive the Kenworth and replace the fuel filters but the vehicle was still not operating properly. "Shortly thereafter," Ronald

contacted another diesel mechanic to look at the Kenworth and make repairs. While completing the repairs, the "turbo" which was installed by Cross required replacement.

Cross conducted depositions of Ronald and Christina in October 2020. In January 2021, Cross also conducted a deposition of Ross Welton, the service manager for Inland Truck Parts and Service in Grand Island.

Cross served the appellants with a request for admissions on March 1, 2021. Included in the request for admissions was a request for the appellants to admit that they failed to disclose any expert witnesses who would be necessary to support their claims and that they were notified of Cross' request for inspection of the vehicle's engine and parts. Cross also requested the appellants to admit that the parts installed in the vehicle's engine were destroyed prior to inspection and that this destruction resulted in a spoliation of evidence.

On April 8, 2021, Cross filed a motion for summary judgment. On April 30, the appellants filed a motion for enlargement of time praying to extend the deadline for responses to the request for admissions from March 30, 2021 to May 3, 2021.

On May 17, 2021, a hearing was held on the motion to enlarge time to respond to the request for admissions and the motion for summary judgment. The district court received affidavits from Cross and the unanswered request for admissions. The affidavits averred that the request for admissions was served on March 1, 2021. The district court denied the appellants' motion to enlarge time to respond to the request for admissions. The court stated that the appellants had provided no evidence as to why they were not able to provide timely responses to the request for admissions. The record also revealed that the appellants had failed to comply with past deadlines and orders of the court regarding other requested discovery.

With respect to the motion for summary judgment, the district court received copies of the operative pleadings, the affidavits of counsel for Cross, various discovery filings, and portions of the depositions taken of Ronald, Christina, and Welton. Among other topics of testimony, Ronald testified that Cross had been given the opportunity to inspect the parts removed at Inland Truck Parts and Service. Ronald testified that he had told Welton not to dispose of the parts. In his deposition, Welton testified that he received no instructions from Ronald or Christina to preserve the removed truck parts.

On June 25, 2021, the district court entered an order granting Cross' motion for summary judgment. Relying on *McGill Restoration, Inc. v. Lion Place Condominium Association*, 309 Neb. 202, 959 N.W.2d 251 (2021), the district court determined that expert testimony was necessary to determine the technical sufficiency of the work completed on the Kenworth by Cross. The court reasoned that the alleged substandard work of Cross was not observable by a lay witness. The district court found that the appellants had "no expert witness to provide evidence that the work" Cross performed was in a "substandard manner and that it was the proximate cause of the damage" that the appellants alleged. The district court further found that "the technical nature of the repair work and the number of potential factors affecting its durability were outside the scope of ordinary experience." The district court concluded that a "defendant's negligence is not actionable unless it is the proximate cause of damage to [the] vehicle or is a cause that proximately contributed to the damage."

In addition, the district court determined that Cross put the appellants on notice to preserve the engine parts for inspection and the appellants failed to preserve the parts. Therefore, the court found that the appellants' failure to do so resulted in the spoliation of evidence.

The appellants now appeal to this court.

ASSIGNMENTS OF ERROR

The appellants assign and argue that the district court erred by granting Cross' motion for summary judgment and in finding that the appellants failed to preserve parts for inspection.

STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *State ex rel. Malone v. Baldonado-Bellamy*, 307 Neb. 549, 950 N.W.2d 81 (2020).

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *First State Bank Neb. v. MP Nexlevel*, 307 Neb. 198, 948 N.W.2d 708 (2020). In reviewing an order granting summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

ANALYSIS

*Real Party in Interest.*

In its answer to the amended complaint, Cross asserted that Ronald and Christina were not the real parties in interest because the Kenworth was owned by Big Hammer. As such, Cross claimed that the district court lacked subject matter jurisdiction as to their claims. The district court did not address this claim in its order. Cross now reasserts this claim in its brief on appeal, but did not file a cross-appeal. Nevertheless, because Cross' assertion affects our jurisdiction to hear the appeal, we address Cross' argument.

The question of whether a party who commences an action has standing and is therefore the real party in interest is jurisdictional. Because the requirement of standing is fundamental to a court's exercise of jurisdiction, either a litigant or a court can raise the question of standing at any time. *Jacobs Eng'g Grp. Inc. v. ConAgra Foods, Inc.*, 301 Neb. 38, 917 N.W.2d 435 (2018).

Neb. Rev. Stat. § 25-301 (Reissue 2016) provides that "[e]very action shall be prosecuted in the name of the real party in interest. . . ." The purpose of this section is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause. *Jacobs Eng'g Grp. Inc. v. ConAgra Foods, Inc., supra.* The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter or controversy. *Id.* Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's or tribunal's exercising its jurisdiction and remedial powers on the party's behalf. *Id.* Generally, when the proper party is identified as a party plaintiff bringing the action,

- 4 -

there is not a jurisdictional issue involving the real party interest. See *LeRette v. Howard*, 300 Neb. 128, 912 N.W.2d 706 (2018).

Cross asserted that Ronald and Christina are not the real parties in interest because the Kenworth was owned by Big Hammer and not by Ronald and Christina individually. The caption of the amended complaint states that the plaintiffs in the action are Ronald, Christina, and Big Hammer. The amended complaint states that Big Hammer was owned by Ronald and Christina. However, the depositions of Ronald and Christina demonstrated that Ronald was the sole owner and shareholder of Big Hammer, and that Big Hammer was the owner of the Kenworth. Based on the facts of this case, Big Hammer was sufficiently identified as a party plaintiff. However, Ronald and Christina lacked standing to bring this action in their individual capacities. Therefore, we find that they should be dismissed as parties to the case. We will analyze the merits of the motion for summary judgment only as to Big Hammer.

*Summary Judgment.*

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Kline v. Farmers Ins. Exch.*, 277 Neb. 874, 766 N.W.2d 118 (2009). A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial. *Id.* After the movant for summary judgment makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.* Failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Freeman v. Hoffman-La Roche, Inc.*, 300 Neb. 47, 911 N.W.2d 591 (2018).

There is a general requirement that a plaintiff in a breach of contract action must prove that the breach was the proximate cause of the damages claimed. *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020). It is a basic concept that in any action for a breach of contract, the claimant must prove that the breach of contract complained of was the proximate cause of the alleged damages. *Id.* There must be a causal relationship established between the damages asserted and the breach relied upon. *Id.* Similarly, in a negligence action, the burden is on the plaintiff to show that there was a negligent act or omission by the defendant which was the proximate cause of injury to the plaintiff or proximately contributed to it. *Fackler v. Genetzky*, 263 Neb. 68, 638 N.W.2d 521 (2002). In a case such as this involving the provision of services, proof must be established showing that the service provided did not meet the standard of care expected from a provider. See *McGill Restoration, Inc. v. Lion Place Condominium Association*, 309 Neb. 202, 959 N.W.2d 251 (2021).

The Nebraska Supreme Court has explained that ordinarily, the standard of care for the rendering of services in the practice of a trade is outside the common knowledge and experience of ordinary persons and must, therefore, be established by expert testimony. *Id.* Findings of facts as to technical matters beyond the scope of ordinary experience are usually not warranted in the absence of expert testimony supporting such findings. *Id.*

The district court made the following findings in its order:

Expert testimony is not necessarily required to establish a breach by the failure to achieve a promised particular result that can be shown by lay witness observations. In *McGill*, expert testimony was necessary in this case to determine the technical sufficiency of McGill's structural work and installations. The technical nature of the repair work and the number of potential factors affecting its durability were outside the scope of ordinary experience.

It is clear from the allegations in the Complaint and the evidence, that measurements were required, and diagnostic work performed in the course of evaluating what was wrong with Plaintiff's vehicle. The failures discussed in the evidence and alleged by the Plaintiff are not observable the lay witness. Plaintiff had no expert witness to provide evidence that the work for Cross and Sons was performed in a substandard manner and that it was the proximate cause of the damage Plaintiff alleges he suffered.

As in *McGill*, the technical nature of the repair work and the number of potential factors affecting its durability were outside the scope of ordinary experience. Expert testimony was necessary in this case to determine the technical sufficiency of Cross and Son's work on Defendant's vehicle. A defendant's negligence is not actionable unless it is the proximate cause of damage to Plaintiff's vehicle or is a cause that proximately contributed to the damage.

Upon our review of the record, the district court did not err in granting Cross' motion for summary judgment. Big Hammer did not provide any evidence to support its claim that any breach of contract was the proximate cause for any damages. There was no expert testimony that the work performed by Cross was not done in a workmanlike fashion in accordance with industry standards.

In its brief on appeal, Big Hammer cites to certain aspects of both Ronald's and Welton's depositions to support their contentions that Cross' mechanical work was substandard and caused the damages that they allege. Although some portions of the depositions were offered and are contained in our record, the pages and exhibits that Big Hammer specifically cites were not offered or received in the district court, thus do not appear in our record. When reviewing the decision of a lower court, we may consider only evidence included within the record. *Home Fed. Sav. & Loan Ass'n v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678 (1993).

We agree with the district court that given the nature of the claims brought by Big Hammer, expert testimony is necessary. The proof necessary in this action is outside the common knowledge and experience of the ordinary person. There is no evidence in our record to establish that any alleged breach of contract was the proximate cause of any damages suffered by Big Hammer. Nothing in our evidentiary record indicates the work by Cross on the vehicle caused any of the damages that Big Hammer complained of. At best, our record only contains the allegations in the amended complaint that draw a connection between the actions of Cross and the damages suffered by Big Hammer. However, pleadings alone are not proof but mere allegations of what the parties expect the evidence to show. *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017).

The negligence claim fails for similar reasons. Big Hammer did not provide any expert testimony to establish a standard of care or demonstrate that Cross' work was below the applicable standard of care prescribed in the diesel mechanic industry. The determination of whether Cross'

work was done pursuant to the pertinent standard of care was outside the scope of ordinary experience. Specifically, the appellants alleged that Cross misdiagnosed algae being in a diesel fuel tank, misaligned the engine, tightened the Jakes too tight, did not tighten the engine injectors enough, installed a turbo which Cross should have known was defective, and that this work caused a failure of the radiator and air conditioner. These specific allegations require expert testimony to establish what the applicable standard of care is and whether the work done by Cross met that standard.

Finally, for the sake of completeness, we note that Big Hammer does not appeal from the court's order which denied its request for an extension of time to file its responses to the request for admissions, nor does it assign error to the court's decision not to receive counsel's email identifying an expert and its responses to the request for admissions. We note that the receipt of those documents would not have aided Big Hammer's position. The record would have remained devoid of any expert opinion that established the necessary elements of Big Hammer's claim. Accordingly, we find that the district court did not err in granting Cross' motion for summary judgment.

*Spoliation.*

Finally, Big Hammer argues that the district court erred in finding that it failed to preserve the engine parts for inspection resulting in spoliation of the evidence. While we recognize that there is some evidence in the record that Ronald did instruct Welton to maintain the parts removed and that employees of Cross exercised the opportunity to inspect the parts, we find that we need not resolve this issue. Having found that summary judgment was proper based on Big Hammer's failure to provide an expert opinion regarding its claims, we need not address whether Big Hammer was responsible for spoliation of evidence. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021).

CONCLUSION

Because there was no expert evidence adduced showing that the alleged breach of contract was the proximate cause of the damages alleged by Big Hammer and there was no expert evidence adduced to establish that Cross' work was below the applicable standard of care, the district court did not err in granting summary judgment in Cross' favor.

AFFIRMED.